WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| HM Hotel Properties, an Arizona Limited Liability Company,<br><br>        Plaintiff,<br><br>vs.<br><br>Peerless Indemnity Insurance Company; and Does 1 - 50, inclusive,<br><br>        Defendants. | No. CV12-0548 PHX-DGC<br><br>**ORDER** |

Defendant Peerless Indemnity Insurance Company has filed a motion for summary judgment on Claims 1 and 2 of Plaintiff HM Hotel Properties' complaint. Doc. 56. The motion has been fully briefed. Docs. 60, 63. For the reasons that follow, the Court will grant the motion and enter summary judgment in favor of Defendant.[1]

**I.  Background.**

The parties agree on the following relevant facts:  Plaintiff entered into an insurance contract with Defendant. Doc. 1-1, ¶ 7. Plaintiff paid Defendant an annual premium in exchange for coverage of its properties against damage caused by storms, including damage caused by hail. *Id.*, ¶ 8. At all relevant times, Plaintiff's insurance policy was in effect. *Id.*, ¶ 12. On October 5, 2010, a large hail storm occurred near Plaintiff's property. *Id.*, ¶¶ 14-15. Several months later, a guest at the hotel with roofing

---

[1] Defendant's request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

expertise informed management of possible hail damage to the roof caused by the October storm. Doc. 57, ¶ 20. Based on the guest's informal inspection of the roof, Plaintiff filed a claim for storm-related damage to the roof on May 11, 2011. Doc. 1-1, ¶ 16. On May 24, 2011, Defendant retained Pinnacle Restoration ("Pinnacle") to inspect the roof for evidence of hail damage. *Id.*, ¶ 17. Pinnacle reported no hail damage. *Id.* On June 7, 2011, Defendant retained an engineer from Project, Time & Cost Forensic Consultants ("PT&C") to re-inspect the roof and provide a second opinion. Doc. 57, ¶ 30. The PT&C engineer reported that any damage to the roof was not caused by hail. *Id.*, ¶ 33. Accordingly, on June 16, 2011, Defendant denied Plaintiff's claim for hail-related roof damage. *Id.*, ¶¶ 35, 36.

Plaintiff disagreed with the findings of Defendant's experts and, on October 13, 2011, advised Defendant that it had retained counsel. *Id.*, ¶ 39. Plaintiff then retained an independent adjuster from Austin Insurance who inspected the property and reported hail damage to the roof and other parts of the property. Defendant re-opened the case and retained Absolute Adjusting to inspect the other parts of the property. *Id.*, ¶¶ 42-43. Absolute did not inspect the roof because it did not have access to the roof and because Defendant said it was not necessary in light of the two previous inspections. *Id.*, ¶ 49. Based on Absolute's damage report, Defendant sent a check to Plaintiff for $39,587.41 for post-depreciation damage to the other parts of the property. Doc. 1-1, ¶ 19.

Plaintiff's original complaint alleged seven counts including breach of contract, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, negligent infliction of emotional distress, fraud, negligent misrepresentation, and declaratory relief. Doc. 1-1. The Court granted Defendant's motion to dismiss on five of the seven claims. Doc. 15. The remaining counts allege breach of contract and breach of the implied covenant of good faith and fair dealing.

**II.     Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record]

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The judge's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

**III.   Analysis.**

    **A.   Breach of Contract.**

To prevail on breach of contract, Plaintiff must prove the existence of a contract between Plaintiff and Defendant, a breach of the contract by Defendant, and resulting damage to Plaintiff. *See Coleman v. Watts*, 87 F. Supp. 2d 944, 955 (D. Ariz. 1998) (citing *Clark v. Compania Ganadera de Cananea, S.A.*, 387 P.2d 235, 237 (Ariz. 1963)).

    **1.   Delay.**

Plaintiff asserts that Defendant breached the contract by "delaying Plaintiff's claim." Doc. 1 at ¶ 30. Defendant argues that there are no issues for trial because Plaintiff fails to specify which clause of the contract was violated by any alleged delay, and fails to identify any damages caused by any breach. The Court agrees. The record simply contains a litany of facts and dates, with no references to any specific contractual

provisions. In the absence of any evidence that Defendant's alleged delay breached a term of the contract, the Court concludes Plaintiff has made an insufficient showing to survive summary judgment on its delay claim.

### 2. Nonpayment.

The breach of contract count in Plaintiff's complaint alleges delay. Doc. 1-1, ¶ 30. It does not allege nonpayment as a breach. Although nonpayment appears to be a new theory of breach raised in Plaintiff's response brief, the facts of the breach of contract claim remain essentially the same whether the claim is for delay or nonpayment. Both parties address claims of nonpayment as well as delay, and both parties present evidence regarding nonpayment. The Court concludes that Defendants were therefore on notice of a claim for nonpayment, no matter how poorly the claim was articulated in the complaint. The Court will consider the nonpayment claim.

Defendant argues in its summary judgment motion that Plaintiff has disclosed no expert on the cost to repair the alleged hail damage to its roof. Doc. 56 at 10. Because proof of damages is required for a breach of contract claim, Defendant argues that it is entitled to summary judgment. *Id.* Plaintiff does not address this argument in its response. Doc. 60 at 2-4. Indeed, in its controverting statement of facts Plaintiff actually admits that it does not know the cost to repair the alleged damage to its roof. Paragraph 59 of Defendant's statement of undisputed facts asserts that "Plaintiff does not know how much it will cost to repair the damage." Doc. 57, ¶ 59. Plaintiff's controverting statement says simply "[u]ndisputed." Doc. 61 at 7, ¶ 59. Thus, if the Court were to rely on Plaintiff's briefing, it would grant Defendant's motion.

The Court has looked further and found that Exhibit 7 to Plaintiff's response is titled "Loss Recap" and estimates the cost to repair the roof at more than $400,000. Doc. 61-7. This exhibit is not mentioned in Plaintiff's response to the motion for summary judgment, but the Court assumes it was included to show the amount of the claimed loss. The exhibit does, however, present other problems. The source of the document is not identified, its author is not disclosed, and the qualifications of its author

are not mentioned. *Id.* Defendant moved to strike Exhibit 7 as inadmissible hearsay, and Plaintiff filed a response. Docs. 62, 65. Although the Court denied Defendant's motion to strike as not permitted under the Court's local rules (Doc. 66), it has considered the parties' arguments with respect to the admissibility of Exhibit 7.

Defendant argues that Exhibit 7 is an improperly disclosed expert report. Doc. 62. Plaintiff responds by asserting that the report was prepared by a Mr. Settell of Austin Insurance, that Mr. Settell is a licensed insurance adjustor by trade, and that Plaintiff does not intend to call Mr. Settell as an expert witness in this case. Doc. 65 at 8. Plaintiff appears to assert that Mr. Settell will testify as a lay witness and therefore was not required to prepare an expert report under Rule 26(a)(2)(B) or the Court's Case Management Order. The Court is not persuaded.

Exhibit 7 is clearly an opinion on the cost to repair Plaintiff's roof. Under Rule 701 of the Federal Rules of Evidence, a lay witness can provide opinion testimony only if it is "*not* based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c) (emphasis added.) The purpose of this provision is to prevent parties from presenting expert opinion evidence in the guise of lay opinion testimony and thereby evade the disclosure requirements of Rule 26(a)(2) and the gatekeeping role of the trial court. *See* Fed. R. Evid. 701 advisory committee's note (2000); *see also PacificCorp. v. Nw. Pipeline GP*, 879 F. Supp. 2d 1171, 1201 (D. Or. 2012); *Kajer v. HGN, Inc.*, No. 206-CV-001030-KJD-PAL, 2010 WL 1052211, at *4-5 (D. Nev. Mar. 19, 2010).

Exhibit 7 clearly is based on technical or specialized knowledge. It contains a multi-page, detailed breakdown of the work necessary to repair the roof and the cost of each step, from removing roof tile, to the amount and cost of roofing felt, to the need for hurricane clips and wind lock add-ons. Doc. 61-7 at 4. It includes a discussion of scaffolds, cranes, and the amount of labor required for various steps. *Id.* at 5. It includes breakdowns by categories and by rooms. *Id.* at 9-10.

Such specialized knowledge is beyond the ken of an average juror or lay witness.

Courts therefore have recognized that the expertise required to determine sophisticated repair costs falls under Rule 702, not Rule 701. *See*, *e.g.*, *Wickman v. State Farm Fire & Cas. Co.*, 616 F. Supp. 2d 909, 920-21 (E.D. Wis. 2009). Because the information contained in Exhibit 7 constitutes technical or other specialized knowledge within the scope of Rule 702, it cannot be provided in the form of a lay opinion under Rule 701 and should have been disclosed in an expert report under Rule 26(a)(2)(B).

Plaintiff does not dispute that it failed to disclose Mr. Settell as an expert or provide the required expert report, and Exhibit 7 clearly does not satisfy the requirements of Rule 26(a)(2)(B)(i), (ii), (iv), (v), or (vi). Plaintiff therefore cannot use Exhibit 7 to oppose summary judgment or to present evidence at trial unless the failure to make the expert disclosure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Plaintiff does not argue that the nondisclosure was substantially justified, and it clearly is not harmless. By failing to identify Mr. Settell as an expert, Plaintiff deprived Defendant of the opportunity to depose him as an expert or produce a counter-expert.

Under Rule 37(c)(1), the Court concludes that Plaintiff cannot rely on Exhibit 7 to oppose summary judgment on its breach of contract claim. Because Plaintiff has presented no other evidence of its damages, Plaintiff has failed to make a showing sufficient to establish the existence of an element essential to the breach of contract claim and on which Plaintiff will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. The Court therefore will grant summary judgment on Plaintiff's breach of contract claim.

### B.  Breach of the Covenant of Good Faith and Fair Dealing.

Under Arizona law, the covenant of good faith and fair dealing applies to insurance contracts. *Rawlings v. Apodaca*, 726 P.2d 565, 569-70 (Ariz. 1986) ("implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured."). An insured claiming breach of the covenant must prove that (1) the insurer acted unreasonably toward its insured, and (2) the insurer knew that it was acting unreasonably or acted with such reckless disregard that such knowledge may be imputed to it. *Miel v. State Farm Mut. Auto. Ins. Co.*, 110, 912 P.2d 1333, 1339 (Ariz. Ct. App.

1995) (quoting *Trus Joist Corp. v. Safeco Ins. Co. of Am.,* 735 P.2d 125, 134 (Ariz. Ct. App. 1986)). Where the insurance company has a reasonable basis for denying or failing to process a claim, a cause of action for bad faith will not lie. *Lasma Corp. v. Monarch Ins. Co. of Ohio*, 764 P.2d 1118, 1122 (Ariz. 1988). If a reasonable basis exists for denying a claim, even if the basis is later proved incorrect, the insurer cannot be liable for bad faith. *Aetna Cas. & Sur. Co. v. Super. Ct.*, 778 P.2d 1333, 1336 (Ariz. Ct. App. 1989). The tort will not lie for a claim that is "fairly debatable." *Noble v. Nat'l Am. Life Ins. Co.,* 624 P.2d 866, 868 (Ariz. 1981). Arizona courts have held that "there are times when the issue of bad faith is not a question appropriate for determination by the jury." *Aetna Cas. & Sur. Co.*, 778 P.2d at 1336.

Plaintiff's complaint alleges that Defendant acted in bath faith because it made an "unwarranted" referral of the claim to the fraud department, (2) delayed resolution of the claim by refusing to pay, (3) deceived Plaintiff as to available coverage under the policy, (4) failed to make prompt payment in order to coerce Plaintiff into settling for a reduced amount of money, and (5) changed its standards and policies for payment of hail and wind damage claims after the alleged damage occurred. Doc. 1-1 at 8.

Defendant argues that summary judgment is appropriate because Plaintiff has presented no evidence that Defendant referred the claim to the fraud department, deceived Plaintiff as to coverage under the policy, or changed its standards for hail and wind damage claims. Plaintiff has not responded to these arguments, nor has it provided any evidence to support them.

The other two bad faith allegations concern the reasonableness of Defendant's denial of coverage for the roof. After Plaintiff filed the claim for hail damage to the roof, Defendant retained two independent experts to inspect the roof on separate occasions. Both reported that the roof damage was not caused by hail. In support of its bad faith claim, Plaintiff asserts that Defendant should have conducted further investigations after Plaintiff retained counsel and hired Austin Insurance to conduct an inspection that found roof damage. Plaintiff asserts that Defendant's insurance adjustor admitted in deposition

that Defendant failed to conduct a reasonably thorough investigation of the claim, but this is clearly an incorrect reading of the testimony. Doc. 60 at 7. The adjustor testified that no single inspector reviewed the entire property (Defendant retained three separate inspectors, two to review the roof and one to review the rest of the property), but clearly did not suggest that the overall review of the property was incomplete. *See* Doc. 61-5 at 4. Plaintiff also suggests that Defendant's payment of footfall damage to the roof somehow suggests that it acted in in bad faith when it denied payment for hail damage. Doc. 60 at 8. Even if the experts' findings as to the source of the damage were ultimately in error, the Court concludes that a reasonable jury would lack evidence to conclude that the claim was not fairly debatable. Defendant retained two different experts to examine the roof. They independently concluded that hail was not the source of any damage. Plaintiff does not dispute this fact. Nor does Plaintiff argue that the experts were somehow incompetent or in collusion with Defendant. Plaintiff merely asserts that Defendant should have conducted a third inspection of the roof after Plaintiff retained counsel and secured its own expert report. The Court concludes that this record provides no reasonable basis for a jury to conclude that Defendant acted in bad faith. *Anderson*, 477 U.S. at 248. The Court will grant summary judgment to Defendant on Plaintiff's bad faith claim.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Doc. 56) is **granted**.
2. Defendant's motion for reconsideration (Doc. 67) is **denied**.
3. The Clerk is directed to terminate this action.

Dated this 23rd day of August, 2013.

_____
David G. Campbell
United States District Judge